*821 OPINION.
Siepiiin:
The principal issue in this proceeding is the disallowance by the respondent of $230,126.80 as invested capital of the petitioner in 1921. This sum is the total face value of notes given to the petitioner by the Lumber Mineral Co. in payment of interest on certain advances made by the petitioner to the Lumber Mineral Co. during the years 1905 to 1911, inclusive. The amounts and dates of the notes were as follows:
Apr. 30,1907_ $5,200.48
Apr. 30,1908_ 17,110.69
Apr. 30,1909_ 24, 361. 00
Apr. 30,1910_ 31, 602.22
Apr. 30,1911_ 34, 745.85
Apr. 30,1912_ 37,126. 43
Apr. 30,1913_ 39,358.19
Apr. 30,1914_ 40, 621.94
Total_ 230,126. 80
The petitioner, as its principal proof in support of its contention that the face value of the notes should be included in its invested capital in computing its profits tax for 1921, introduced evidence with respect to the financial condition of the maker of the notes from 1918 to 1921. It also relies upon the decision of this Board in W. C. Arthurs, 3 B. T. A. 374, where we held that the stock of the Lumber Mineral Co. was worth par on March 1, 1913. Other evidence in support of its case will be discussed later.
With respect to the evidence of net worth of the Lumber Mineral Co. from 1918 to 1921, the respondent’s contention is that the requirement of section 326 (a) (3) of the Revenue Act of 1921 makes such proof immaterial. That section is as follows:
That as the term is used in this title the term “ invested capital ” for any year means * * * :
* * * * * # #
(3) Paid-in or earned surplus and undivided profits, not including surplus and undivided profits earned during the year.
The respondent points to this language of the statute, as interpreted by the Supreme Court of the United States in Willcuts v. Milton Dairy Co., 275 U. S. 215, and similar language in section 207 (a) (3) of the Revenue Act of 1917, as construed by the Supreme *822 Court of the United States in La Belle Iron Works v. United States, 256 U. S. 377, as requiring that the value of the asset sought to be included in invested capital be proved as of the date of its receipt. In the La Belle Iron Works case, the Supreme Court said:
It is dear enough that Congress adopted the basis of “invested capital” measured according to actual contributions made for stock or shares and actual accessions in the way of surplus, valuing them according to actual and bona fide transactions and by valuations obtaining at the time of acquisition. (Italics supplied.)
In the light of the above, the proof of net assets of the Lumber Mineral Co. from 1918 to 1921 does not bear upon the question at issue, i. e., the value, if any, of the notes in question when received by the petitioner, that is, during the years 1901 to 1914, inclusive. The evidence in support of the respondent’s further position that the notes had no value at the dates received is the fact that each of such notes was charged off the books of the petitioner in the year in which received; the fact that the petitioner never made any claim for these notes as invested capital until 1923 (as indicative of the opinion of the petitioner’s officers of the value of such notes); the fact that from 1914 further interest was waived because of the financial condition of the Lumber Mineral Co., and the fact that the notes were not listed as an asset upon the capital-stock-tax returns of the petitioner. The petitioner argues that the notes were charged off because of an ultra-conservative method of accounting employed by it, points to the finding of the Board in the W. C. Arthurs case, supra, as evidence of the financial condition of the Lumber Mineral Co., at least on March 1, 1913, and further calls attention to the advances made to the Lumber Mineral Co. by the petitioner in the years in which the notes were received. The notes were dated April 30 of each year from 1907 to 1914, inclusive. In 1907, when the interest note of $5,200.48 was received by the petitioner from the Lumber Mineral Co., the petitioner advanced $180,000 to the Lumber Mineral Co. In 1908 an interest note of $17,110.69 was received by the petitioner and $90,000 advanced. In 1909 the interest note was for $24,361, and $82,000 was advanced. Nothing was advanced in 1910 but an interest note of $31,602.22 was received by the petitioner. In 1911 the last advance was made, in the amount of $5,000, and an interest note of $34,745.85 was received. In 1912 the petitioner received an interest note for $37,126.43. In 1913 it received ,an interest note for $39,358.19 and as payment of $21,400 on the principal. In 1914 it received an interest note for $40,021.94 and further interest was waived until the Lumber Mineral Co. was in better financial condition. An “ operating deficit” in each of the years in question is relied upon by the respondent also as showing that the notes were of no value. This argument loses its weight, however, when it is considered that the *823 so-called “ operating deficit ” included the interest notes, and that up to the time the mill was burned in 1916 the Lumber Mineral Co. was expanding its business and actively engaged in its operation, which, from all the evidence, seems to have fairly promised to be successful. We conclude, from all the evidence, that the notes were worth their face value ,at the time paid in.
With respect to the affirmative allegation of the respondent, that is, that he was in error in including in the petitioner’s invested capital for 1921 the sum of $83,800 on account of the par value of the stock of the Lumber Mineral Co., the evidence is clear that petitioner’s investment in that stock was charged off its books on December 31, 1916, and that it had no substantial value after that date. We conclude that the evidence affirmatively sustains the respondent’s allegation and that he was in error in including the par value in the petitioner’s invested capital.
No evidence having been introduced with regard to the first assignment of error, the holding of the respondent in that respect is affirmed.

Judgment will be entered under Rule 50.